# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD GRETA,<br><br>                    Plaintiff,<br>vs.<br><br>SURFUN ENTERPRISES, LLC; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO. 3:09-CV-2793 JLS (NLS)<br><br>**ORDER: GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 5) |

Presently before the Court is Defendant's motion to dismiss Plaintiff's Complaint. (Doc. No. 5.) Also before the Court is Plaintiff's opposition and Defendant's reply. (Doc. Nos. 8 & 9.) Having fully considered the parties' arguments and the law, Defendant's motion to dismiss is **GRANTED**.

## BACKGROUND

From May 2, 2006 to October 2007, Plaintiff Edward Greta ("Plaintiff") was employed by Defendant Surfun Enterprises, LLC ("Defendant") as a first mate of the vessel Reel Pain II. (Doc. No. 1 ("Complaint") ¶ 8.) From October 16, 2007 through October 27, 2007, the Chief Executive Officer of Surfun, David James Smith ("Smith"), wanted to be taken out on a trip with his friends to Cabo San Lucas, Mexico. (Complaint ¶¶ 10-11.) Plaintiff, a crew member, and the captain were in charge of the vessel and the voyage. (*Id.*) Before the vessel departed, Plaintiff and his captain consulted Smith about a tropical depression, "KIKO," off the coast of Mexico. (*Id.* ¶ 12.) During the trip, Plaintiff and his captain monitored KIKO and advised Smith of proposed itinerary

1  alternatives.  (*Id.* ¶ 15.)  Smith ordered the captain to continue with the trip as planned.  (*Id.*)  By
2  October 18, 2007, KIKO was elevated to a tropical storm, but Smith still rejected proposed
3  alternative plans.  (*Id.* ¶ 17.)  On October 19, 2007, Smith attended a meeting at the request of
4  Plaintiff, the captain, and a crew member.  (*Id.* ¶ 20.)  At this meeting, Smith agreed to follow one
5  of the captain's recommendations.  (*Id.*)  According to the change in plans, the vessel proceeded to
6  Cabo San Lucas, Mexico where Smith and his friends flew back to San Diego, California.  (*Id.*)
7  Plaintiff and the crew immediately departed Mexico on the vessel and avoided the storm.  (*Id.*)
8  After Plaintiff returned to San Diego, California, he was fired by Smith for gross misconduct and
9  lack of confidence.  (*Id.* ¶ 21.)

10  Plaintiff filed his complaint in the Superior Court for the State of California for the County
11  of San Diego on October 27, 2009.  (Doc. No. 1.)  The Complaint alleges two causes of action:
12  retaliation and wrongful termination in violation of public policy.  (*Id.*)  Defendant removed the
13  action to this Court on December 15, 2009 and filed the present motion to dismiss on January 7,
14  2010.  (Doc. Nos. 1 & 5.)  Plaintiff filed his opposition on February 9, 2010 (Doc. No. 15.), and
15  Defendant filed its reply on February 17, 2010.  (Doc. No. 18.)  The hearing on Defendant's
16  motion to dismiss was set for February 27, 2010.  (Doc. No. 14.)  The hearing was vacated and
17  taken under submission without oral argument.  (*Id.*)

18  **LEGAL STANDARD**

19  Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that
20  the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a
21  motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and
22  sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
23  statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not
24  require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
25  defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, – US — , 129 S. Ct. 1937, 1949
26  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a
27  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
28  labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

## ANALYSIS

### I. Jurisdiction

In Plaintiff's opposition, Plaintiff argues that the Court should remand the case to state court on jurisdictional grounds. (*See* Doc. No. 8.) In its reply, Defendant contends the Court has jurisdiction over the present action. (*See* Doc. No. 9.) Before considering the merits of Defendant's motion to dismiss, the Court finds it necessary to address the jurisdictional issues.

Under the United States Constitution, codified at 28 U.S.C. § 1333(1), a district court has original jurisdiction over "any civil case of admiralty or maritime jurisdiction . . . . " 28 U.S.C. § 1333; *see also* U.S. Const. art. III, § 2, cl. 1; 28 U.S.C. § 1441 ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States . . . ."). For a party to invoke federal admiralty jurisdiction over a tort claim, the party must meet both a location test and a connection test. *Mission Bay Jet Sports, LLC v. Colombo*, 570 F.3d 1124, 1126 (9th Cir. 2009) (citation omitted). This generally means that the tort occurred on navigable waters and bears a "significant relationship to traditional maritime activity." *Id.* (citation omitted). Under the location test, a court considers "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Id.* (quoting *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)); *see also Lewinter v. Genmar Indus., Inc.*, 26 Cal. App. 4th 1214, 1218 (Ct. App. 1994) (finding that "under the first test, known as the 'locality' test, '[e]very species of tort, however occurring, and whether on board a vessel or not, if upon the high seas on navigable waters, is of admiralty cognizance.'") (citation omitted); 46 U.S.C. § 30101. Under the connection or "nexus" test, a court must assess two things: 1) the incident involved and its potentially "disruptive impact on maritime commerce" and 2) the general character of the "activity giving rise to the incident" and its "substantial relationship to traditional maritime activity." *Id.* (quoting *Sisson v. Ruby*, 497 U.S. 358, 362-64 (1990)).

In California, an action for wrongful termination in violation of a public policy embodied in a constitutional or statutory provision "gives rise to a tort action." *Lamke v. Sunstate Equipment Co.*, 387 F. Supp. 2d 1044, 1051 (N.D. Cal. 2004) (citing *Barton v. New United Motor Mfg., Inc.*, 43 Cal. App. 4th 1200, 1205 (1996)). Similarly, a person who has been "retaliatorily terminated for reasons which violate the state's public policy may maintain a tort cause of action . . . " *Froyd v. Cook*, 681 F. Supp. 669, 671 (E.D. Cal. 1988). Thus, a federal district court may have federal admiralty jurisdiction over a wrongful termination action or a retaliatory discharge claim if the location and connection tests are satisfied.

1    Here, the Court finds that both the location and connection tests are met and thus gives this
2 Court federal admiralty jurisdiction over Plaintiff's wrongful termination and retaliation claims
3 alleged in his Complaint. Plaintiff's alleged injury of wrongful termination and retaliation
4 occurred after Plaintiff returned to land in San Diego, California. (*See generally* Complaint.)
5 However, the location test is satisfied because Plaintiff's allegations arise from incidents occurring
6 on a maritime vessel, the Reel Pain II, in the Pacific Ocean. (*See id.* ¶¶ 8, 29.)

7    The Court also finds that the connection/"nexus" test is satisfied. First, the alleged incident
8 leading to Plaintiff's discharge could have had a potentially disruptive impact on maritime
9 commerce. The incident at issue involved a noncommercial voyage to Cabo San Lucas, Mexico.
10 (*Id.* ¶ 11.) However, the noncommercial nature of the voyage is of no consequence because the
11 supposed events onboard the Reel Pain II potentially could have impacted maritime commerce.
12 *See Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982) (upholding federal admiralty
13 jurisdiction over the collision of two pleasure boats given the potential effect of noncommercial
14 maritime activity on maritime commerce). If Plaintiff and crew had complied with orders to
15 continue the voyage as originally planned, the tropical storm could have resulted in the loss of a
16 captain, members onboard, and Plaintiff. (*See* Complaint ¶ 10.) The potential impact on maritime
17 commerce is especially pronounced given Plaintiff's position as a U.S. Merchant Marine Officer
18 engaged in *commercial* assisted towing. (*Id.* ¶ 8.) Such general losses have been found to have
19 potentially disruptive impacts on maritime commerce. *See, e.g.*, *Gruver v. Lesman Fisheries Inc.*,
20 489 F.3d 978, 982-83 (9th Cir. 2007) (finding that depriving a vessel of a deckhand could have
21 detrimental effects on maritime commerce); *Taghadomi v. United States*, 401 F.3d 1080, 1086 (9th
22 Cir. 2005) (holding that injury to boaters could potentially affect maritime commerce because
23 "efficacy of search-and-rescue operations has a direct effect on the health and lives of seamen").
24 Thus, the Court finds that the first prong of the connection test is satisfied.

25    Similarly, the second prong of the connection test is satisfied because the activity in which
26 Plaintiff was engaged, navigating a maritime vessel through the Pacific Ocean, directly relates to
27 maritime activity. *See Grubart*, 513 U.S. at 540 (emphasizing that "navigation of boats in
28 navigable waters clearly falls within the substantial relationship [to maritime activity

requirement]"). Accordingly, this case falls within this Court's general federal admiralty jurisdiction.[1] Thus, the Court has proper jurisdiction over Plaintiff's wrongful termination and retaliation claims.

## II.     Statute of Limitations

In Defendant's motion to dismiss and reply, Defendant asserts that Plaintiff's claims are barred under a one-year statute of limitations in California. (See Doc. Nos. 5 & 9.) In his opposition, Plaintiff argues that the applicable statute of limitations is two years. (See Doc. No. 8.) The Court agrees with Plaintiff.

Generally, claims for retaliatory discharge and wrongful discharge in violation of public policy are common law tort actions. *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). Although California Code of Civil Procedure § 340(3) generally provides for a one-year statute of limitations for torts, that section is not applicable here. *See* Cal. Civ. Pro. Code § 340(3). Instead, the Court finds the applicable statute of limitations is governed by California Code of Civil Procedure § 335.1. Effective January 1, 2003, Section 335.1 changed the California statute of limitations for personal injury torts to two years. *See* Cal. Civ. Proc. Code § 335.1; *Lamke*, 387 F. Supp. at 1051 (holding that there is a two-year statute of limitations for torts under current law); *Mathieu v. Norrell Corp.*, 115 Cal. App. 4th 1174, 1189 (Ct. App. 2004) (finding that the two-year statute of limitations under § 335.1 applied to claims for wrongful discharge in violation of public policy). Plaintiff was terminated on October 31, 2007. (Opp. at 3.) His complaint was filed on October 27, 2009. (*Id.* at 4.) Thus, Plaintiff's claims are not barred pursuant to the two-year statute of limitations under California Civil Code of Procedure § 335.1.

## III.    Motion to Dismiss For Failure To State A Claim

### A.    Retaliation

---

[1] Though not explicitly addressing the court's jurisdiction, cases have found valid causes of action for wrongful termination under general maritime law. *See, e.g.*, *Seymore v. Lake Tahoe Cruises, Inc.*, 888 F. Supp 1029, 1034 (E.D. Cal 1995) (recognizing on summary judgment an action for wrongful termination in violation of public policy under general maritime law); *Smith v. Atlas Off-Shore Boat Serv., Inc.*, 653 F.2d 1057 (5th Cir. 1981) (recognizing a maritime cause of action for wrongful discharge).

- 6 -

Pursuant to Rule 12(b)(6), Defendant moves to dismiss Plaintiff's claim for retaliation. (*See* Doc. No. 5.) Defendant primarily argues that Plaintiff's Complaint does not plead sufficient facts to establish the prima facie elements of a retaliation claim. For the reasons stated below, the Court agrees and **GRANTS** Defendant's motion to dismiss the wrongful discharge claim. (*Id.*)

To adequately plead a claim for retaliation, Plaintiff must allege that: 1) he engaged in a protected activity; 2) was subjected to adverse employment action; and 3) that there was a causal link between the protected activity and the adverse employment decision. *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). In this case, Plaintiff fails to explicitly establish that he engaged in a protected activity. The Complaint merely states that "Plaintiff Greta was a protected employee within the meaning of California law." (Complaint ¶ 23.) This conclusory allegation is insufficient to satisfy the first element of the prima facie case for retaliation under these circumstances.[2] Here, the Complaint vaguely alleges that Defendant retaliated against Plaintiff "for trying to exercise his best judgment and in following applicable law . . . " (Complaint ¶ 25.) As explained more below, the facts alleged and mere citation of alleged "applicable law" do not sufficiently establish that Plaintiff was a "protected employee" or otherwise engaged in a "protected activity." Further, the Complaint does not sufficiently establish the requisite causal connection. The Complaint states that "Smith cited gross misconduct and lack of confidence as the reasons" for Plaintiff's termination. (Complaint ¶ 21.) This does not adequately allege a causal link between Plaintiff's protected activity and the adverse employment action. Given that the Complaint fails to establish the protected activity in which Plaintiff was engaged and its causal link to Plaintiff's termination, the Complaint fails to articulate any cognizable claim for retaliation.[3]

---

[2] To be sure, courts have found the plaintiff engaged in "protected activities" sufficient to allege a retaliation claim, but in situations unrelated to Plaintiff's circumstances. *See, e.g., Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1252 (Ct. App. 2008) (finding that an employee believed to be a complainant or witness in a Fair Employment and Housing Act action is engaged in a protected activity); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1043 (2005) (emphasizing that an employee "who has complained of or opposed conduct that the employee reasonably believes to be discriminatory" engages in protected activity).

[3] However, the Court finds that Plaintiff's termination adequately supports the allegation of an "adverse employment action." *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986) (recognizing that in "the typical termination case, the 'adverse employment decision' is the

- 7 -

### B. Wrongful Discharge

Defendant also moves to dismiss Plaintiff's claim for wrongful discharge pursuant to Rule 12(b)(6). (*See* Doc. No. 5.) Defendant primarily argues that Plaintiff's Complaint does not plead sufficient facts to meet the public policy exception to California's at-will doctrine, which states that an employer has an unrestricted right to terminate an employee at-will. (*Id.*) For the reasons stated below, the Court agrees and **GRANTS** Defendant's motion to dismiss the wrongful discharge claim.

In California, there is a presumption of at-will employment that can be terminated. *See* Cal. Lab. Code § 2922. However, a plaintiff may maintain a wrongful discharge action if the termination violates a public policy. *Sinatra v. Chico Unified School Dist.*, 119 Cal. App. 4th 701, 705 (Ct. App. 2004). To adequately plead a wrongful discharge claim in violation of public policy, Plaintiff must assert a policy "that is 'fundamental' and 'substantial' in that it is tethered to constitutional or statutory law, that inures to the benefit of the public rather than to a personal or proprietary interest of the individual employee, and that is clearly articulated at the time of discharge." *Id.* at 706. (citation omitted). Generally, courts allow tortious claims for wrongful discharge in violation of public policy where the employee was terminated for: "(1) refusal to violate a statute; (2) performing a statutory obligation; (3) exercising a statutory or constitutional right or privilege; or (4) reporting an alleged violation of a statute of public significance." *Id.* (citing *Pettus v. Cole*, 49 Cal. App. 4th 402, 454 (Ct. App. 1996)).

In this case, Defendant correctly asserts that Plaintiff does not adequately plead a public policy tethered to constitutional or statutory law, which his termination supposedly violated. (*See* Doc. No. 5.) Plaintiff alleges that the laws he followed and for which he was consequently discharged "include but are not limited to United States Coast Guards Rules and Regulations, 46 U.S.C. § 2302, California Harbor and Navigation Code § 773.4, California Labor Code § 6310(b) as well as other California, Agency, and Federal, regulations and codes." (Complaint ¶ 25.)

---

termination itself.").

- 8 -

1  Plaintiff's Complaint does not identify a specific public policy tethered to these statutory
2  provisions.

3  Under 46 U.S.C. § 2302(a), "a person operating a vessel in a negligent manner or
4  interfering with the safe operation of a vessel, so as to endanger life, limb, or property of a person
5  is liable to the United States Government for a civil penalty . . . " 46 U.S.C. § 2302(a). However,
6  Plaintiff's Complaint does not assert a "fundamental and substantial" public policy that is tethered
7  to this statutory provision. Instead, the Complaint merely alleges that Plaintiff was "terminated for
8  trying to exercise his best judgment and in following applicable law as first mate of the vessel, in
9  protecting the safety of the passengers, crew, and vessel from the dangers of weather and the
10 consequences of illicit activities . . . " (Complaint ¶ 29.) This in no way identifies a clear public
11 policy "tethered to" 46 U.S.C. § 2302(a).

12 Similarly, the Complaint does not sufficiently plead a public policy tethered to California
13 Harbor and Navigation Code § 773.4 or California Labor Code § 6310(b). California Harbor and
14 Navigation Code § 773.4 provides that "[no] operator or charter shall . . . direct the captain to get
15 underway over the captain's objection that the condition of the vessel, or the weather . . . makes
16 the trip inadvisable." Cal. Harbor & Nav. Code § 773.4(a). Under California Labor Code §
17 6310(b), "any employee who is discharged . . . because the employee . . . has made a bona fide oral
18 or written complaint to . . . his or her employer . . . of unsafe working conditions, or work
19 practices, in his or her employment or place of employment . . . shall be entitled to reinstatement
20 and reimbursement . . . " Cal. Labor Code § 6310(b). Rather than assert a fundamental and
21 substantial public policy connected to these statutory provisions, the Complaint merely states that
22 the applicable laws "include but are not limited to United States Coast Guards Rules and
23 Regulations, 46 U.S.C. § 2302, California Harbor and Navigation Code Section 773.4, California
24 Labor Code section 6310(b) as well as other California, Agency, and Federal, regulations and
25 codes." (Complaint ¶ 25.) In short, the Complaint conclusorily alleges the statutes without
26 identifying any public policy whatsoever.

27
28 For the reasons stated, Plaintiff does not plead sufficient factual matter to state a public
   policy that is tethered to constitutional or statutory law. Thus, the Complaint fails to articulate any

cognizable claim for wrongful termination in violation of public policy.

## CONCLUSION

For the above reasons, the Court **HEREBY GRANTS** Defendant's motion to dismiss Plaintiff's retaliation and wrongful termination claims. The Complaint is **DISMISSED WITHOUT PREJUDICE**. If Plaintiff wishes to do so, he may file a First Amended Complaint curing the deficiencies **within 20 days** of this Order being electronically docketed.

IT IS SO ORDERED.

DATED: July 13, 2010

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge